UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERALD MEUSE,<br><br>          Plaintiff,<br><br>v.<br><br>NATIONAL P.I. SERVICES, LLC, and JOHN DOES 1–10,<br><br>          Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 21-cv-11533-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM & ORDER**

Gerald Meuse ("Plaintiff") alleges that National P.I. Services ("Defendant"), a consumer reporting agency ("CRA") that prepares background screening reports at the request of different companies, violated various provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), and Massachusetts General Laws ch. 151B, § 4(9) by providing reports that contained prohibited details about Plaintiff's criminal record.

Presently before the Court are Defendant's motion to dismiss the complaint, [ECF No. 6], and Plaintiff's motion for leave to file an amended complaint, [ECF No. 14]. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part and Plaintiff's motion is GRANTED.

**I.      BACKGROUND**

    **A.      Factual Background**

The following facts are taken from the complaint, [Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also

considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

In September 2019, Plaintiff applied for a firefighter position with the City of Everett Fire Department (the "Fire Department") in Everett, Massachusetts. [Compl. ¶ 26]. As part of the application process, the Fire Department procured a background screening report (the "Report") about Plaintiff from Defendant. [Id. ¶ 27]. In the Report, Defendant disclosed that in November 2011 Plaintiff was arrested and charged by the Norfolk Virginia Police with assaulting his former girlfriend ("Ms. Mays") and violating a restraining order, and also that the charges were later dropped. [Compl. ¶ 28; ECF No. 17-1 at 6; ECF No. 13 at 14]. The Report also stated that when Defendant's investigator asked Plaintiff if he had been arrested by the Norfolk Police or "put hands on" Ms. Mays, he denied both. [ECF No. 13 at 18]. Because the charges against Plaintiff were ultimately dismissed, the incident did not result in a conviction. See [ECF No. 13 at 6].

Due at least in part to the criminal history contained in the Report, the Fire Department bypassed Plaintiff for the firefighter position. [Compl. ¶ 29]. Plaintiff appealed the hiring decision to the Civil Service Commission of the Commonwealth of Massachusetts ("CSC") in March 2021. [ECF No. 7 at 2; ECF No. 12 at 14]. The CSC appeal is still under advisement. [ECF No. 7 at 2; ECF No. 12 at 14]. Plaintiff alleges that, regardless of the outcome of the CSC appeal, he has incurred economic losses as well as emotional distress and damage to his reputation as a result of the information improperly disclosed in the Report. [Compl. ¶ 30; ECF No. 12 at 14].

### B. Procedural History

On September 19, 2021, Plaintiff filed a three-count complaint alleging violations of (1) 15 U.S.C. § 1681e(b) (Count I); (2) 15 U.S.C. § 1681k(b) (Count II); and (3) 15 U.S.C. § 1681c(a)(2) (Count III). [Compl. ¶¶ 31–43]. On November 15, 2021, Defendant moved to dismiss the complaint for failure to state a claim and lack of standing. [ECF No. 6]. Plaintiff opposed this motion and filed a notice of supplemental authorities on December 9, 2021. [ECF Nos. 12, 13].

Plaintiff subsequently filed a motion for leave to amend his complaint on February 14, 2022, [ECF No. 14], which Defendant opposed on February 28, 2022, [ECF No. 17]. Plaintiff filed a reply in support of his motion, [ECF No. 20], and then an amended reply, which attached a copy of his criminal record, [ECF No. 21].

## II. DEFENDANT'S MOTION TO DISMISS FOR SUBJECT-MATTER JURISDICTION

### A. Legal Standard

Defendant argues that Plaintiff lacks standing both because he has not alleged an injury-in-fact and because his claims are not ripe. [ECF No. 7 at 3–5]. A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the Court's subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Because ripeness and standing raise the issue of the Court's subject-matter jurisdiction, the Court addresses them first. See Morales Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002) ("[T]he preferred—and often the obligatory—practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action.").

3

The party asserting federal jurisdiction has the burden of demonstrating its existence. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Dismissal is appropriate only when the facts alleged in the complaint, taken as true and with the benefit of all reasonable inferences, do not support a finding of federal subject-matter jurisdiction. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

      1.      Article III Standing

The Constitution gives the judiciary power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. This requirement has been interpreted to mean that courts may decide only "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). A plaintiff's standing to sue is "part of the common understanding of what it takes to make a justiciable case." Id. Correspondingly, "the absence of standing sounds the death knell for a case." Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000). The standing determination is "claim-specific," meaning that an individual plaintiff "must have standing to bring each and every claim that [he or] she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012).

Article III standing requires that three conditions be satisfied. "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact.'" Steel Co., 523 U.S. at 103 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). The injury "must be concrete in both a qualitative and temporal sense," "distinct and palpable" as opposed to "abstract," and "actual or imminent" as opposed to "conjectural or hypothetical." Whitmore, 495 U.S. at 155 (internal quotation marks and citations omitted). Second, standing requires causation, defined as a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the

4

defendant." Steel Co., 523 U.S. at 103.  Finally, for standing there must be "redressability–a likelihood that the requested relief will redress the alleged injury."  Id.

    2.    Ripeness

Though a distinct concept, "the doctrine of ripeness has roots in both the Article III case or controversy requirement and in prudential considerations."  Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003).  The ripeness analysis considers two factors: "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (citation omitted).  The First Circuit "generally require[s] both prongs to be satisfied in order for a claim to be considered ripe."  Id.  A claim is unripe if it is dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  Texas v. United States, 523 U.S. 296, 300 (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81 (1985)).

**B.**     **Discussion**

Defendant argues that Plaintiff's claims are not ripe, and thus that the Court lacks subject-matter jurisdiction, because his CSC appeal is pending and because he has not alleged an injury-in-fact.  [ECF No. 7 at 3–5].  Defendant further argues that Plaintiff's claims will not be ready for disposition until after the CSC denies his appeal.  [ECF No. 7 at 4–5].  The Court disagrees.  While potential damages may be impacted by the outcome of the CSC appeal, Plaintiff has adequately alleged that an injury-in-fact, namely delayed employment and reputational harm, has already occurred.

Regarding the former, Plaintiff alleged that the Fire Department declined to hire him as a firefighter "based on the obsolete criminal history contained in the Report[.]"  [Compl. ¶ 29].

5

Drawing all inferences in favor of the Plaintiff, the Court interprets this as an allegation of delayed employment, which is a recognized form of injury. See Smith v. LexisNexis Screening Solutions, Inc., 837 F.3d 604, 612 (2016) (affirming award of damages for delayed employment). Plaintiff further alleges that the Report's improper inclusion of his criminal history caused him reputational harm because it led the Fire Department to conclude that he "was not a suitable candidate[.]" [Compl. ¶ 29]. Reputational damage has also been recognized as a legitimate form of injury. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2200 (2021) (recognizing reputational harm as a concrete harm). Therefore, the Court finds that Plaintiff's claims do not hinge on "contingent future events that may not occur as anticipated, or indeed may not occur at all," Texas, 523 U.S. at 300, and, accordingly, are ripe.

Defendant also contends that Plaintiff cannot establish Article III standing because he has not suffered any injury-in-fact. [ECF No. 7 at 4–5]. The Court again disagrees. Even without the final disposition of the CSC appeal, Plaintiff has alleged economic damages due to delayed employment and reputational harm as discussed above. Because these alleged injuries are sufficiently particular and concrete, Plaintiff has standing to bring his claims.

**III.    DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Having resolved the threshold issues of standing and ripeness, the Court turns to the merits of the three alleged FCRA violations. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and

conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

    **A.    Discussion**

        1.    <u>Count I: Violation of § 1681e(b)</u>

Section 1681e(b) requires that when a CRA prepares a report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To make out a claim under § 1681e(b) a plaintiff must allege: "(1) inaccurate information was included in a consumer's credit report; (2)

the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 85 (D. Mass. 2001) (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996)); see also McIntyre v. RentGrow, Inc., 34 F.4th 87, 96 (1st Cir. 2022) (citing DeAndrade v. Trans Union LLC, 523 F.3d 61, 65–66 (1st Cir. 2008) ("In order to succeed on a section 1681e(b) claim, the plaintiff must show that h[is] [] report contained one or more material inaccuracies.").

Regarding the first prong, the First Circuit has stated that a material inaccuracy can be established by "showing that the report contained an entry or entries that . . . were either false or materially misleading." McIntyre, 34 F.4th at 96 (citing Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008); see also Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998) (explaining that information can be "'inaccurate' within the meaning of [§ 1681e(b)] either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions").

Here, Plaintiff first claims the Report was inaccurate because it contained information that should have been omitted. Specifically, he asserts that the Report contained information about an arrest that occurred, and related charges there were filed, more than seven years before Plaintiff applied for a job at the Fire Department. [Compl. ¶¶ 10–11, 28–29]. Plaintiff characterizes this information as "obsolete," see [id. ¶ 29], and argues that inclusion of the information makes the report "technically inaccurate" because including criminal history that is more than seven years old is "illegal" and because the report does not accurately reflect the current public record status of his criminal records, [ECF No. 12 at 18].

Plaintiff's argument relies on a capacious view of the term "accuracy" in § 1681e(b).  As Plaintiff would have it, even if a report included complete and accurate information about an arrest, a CRA would nonetheless violate § 1681e(b) if the arrest was more than seven years old.  But § 1681e(b), unlike § 1681c(a)(2), does not require the exclusion of arrests that antedate the report by more than seven years and the Court declines to read such a requirement into the statute.  See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 588 (2010) (noting that where a separate statutory provision by its plain terms is "obviously tailored to the concern at issue," there is less of a rationale for "stretching the language of the [statutory provision] to accommodate [an] expansive reading").

Here, it is not disputed that the Report discloses Plaintiff's November 2011 arrest and related charges, including that the charges were dropped.  [ECF No. 13 at 14].  Plaintiff also acknowledges that "in November 2011 . . . [he] was arrested and charged by the Norfolk Virginia Police with assault . . . [and that] all charges were dismissed[.]"  [ECF No. 20 at 1].  Therefore, the Court finds that the statement in the Report is technically accurate.  The Court recognizes, however, that a statement that is technically accurate can nonetheless be materially misleading by, for example, disclosing that a complaint was filed against an individual but omitting that the complaint was later withdrawn.  See e.g., McIntyre, 34 F.4th at 97.  This Report, however, states that Plaintiff was arrested, charged, and that the charges were later dropped, and thereby avoids leaving the impression that the charges are still pending or resulted in a conviction.  [ECF No. 15-1 at 14].  Thus the Court finds that the information in the Report regarding Plaintiff's 2011 arrest is technically accurate and not misleading.

Plaintiff next argues that the Report was misleading because it accused him of dishonesty by disclosing that when Defendant's investigator asked him about the events in November 2011

that led to his arrest, he denied both the arrest and the alleged underlying conduct. [ECF No. 12 at 18]. In Plaintiff's view, his denial, which was factually inaccurate, was not dishonest because he had no obligation, under the circumstances, to admit to his prior arrest. [Id.] Notably, Plaintiff concedes that he was arrested in November 2011, [ECF No. 12 at 8], and does not claim that the Report misrepresented his answers, [id. at 18]. Nor does he challenge Ms. Mays' description of events that led her to call the police and seek a protective order. Plaintiff instead argues that the Report's description of his inaccurate answer is misleading because Massachusetts General Laws ch. 151B, § 4(9) prohibits both Defendant from asking him about the arrest and the Fire Department from discriminating against him for a failure to provide information about said arrest. But whether Defendant or the Fire Department violated Massachusetts General Laws ch. 151B, § 4(9) is a separate question from whether the information is inaccurate or materially misleading in violation of § 1681e(b). Here again the Court declines to read into § 1681e(b) prohibitions contained in a separate statute, namely Massachusetts General Laws ch. 151B, § 4(9). The Court also notes that the Report does not expressly accuse Plaintiff of dishonesty. It merely states that Plaintiff denied the arrest, denied having "put hands on" Ms. Mays, and that Ms. Mays offered a different description of events. [ECF No. 13 at 18]. Moreover, the information does not cause the reader to draw an erroneous inference (e.g., that the charges are still pending). The Court therefore finds that the Report's inclusion of Plaintiff's responses to the investigator's questions regarding his November 2011 arrest did not violate § 1681e(b).

      Because the Court finds that Plaintiff has not plausibly alleged that the information in the Report was either inaccurate or misleading, Defendant's motion to dismiss Count I is <u>GRANTED</u>.

### 2. Count II: Violation of § 1681k(a)

Under § 1681k(a), if a report contains matters of public record that are likely to have an adverse effect upon an individual's ability to obtain employment, CRAs are required to either "notify the consumer of the fact that public record information is being reported," 15 U.S.C. § 1681k(a)(1), or "maintain strict procedures" to ensure the information reported "is complete and up to date," 15 U.S.C. § 1681k(a)(2). Since Defendant did not notify Plaintiff about the Report, it was required, pursuant to § 1681k(a)(2), to maintain strict procedures to ensure that the adverse information in the Report was complete and up to date.

Plaintiff argues that Defendant's failure to "maintain strict procedures" is evidenced by the Report's inclusion of allegedly "obsolete" information that was more than seven years old at the time the Report was issued, which, according to Plaintiff, violates § 1681k(a)(2)'s "up to date" requirement. [ECF No. 1 at 5–7]. To support his argument that the Report was not up to date, Plaintiff points to the fact that his Criminal Offender Record Information ("CORI"), which was appended to the Report, did not include the 2011 arrest. [ECF No. 12 at 22]. Defendant counters that it did not violate § 1681k(a)(2) because the information about Plaintiff's arrest, related charges, and subsequent dismissal of said charges reflects the current public record status of those items at the time the Report was created, even if the information was more than seven years old. [ECF No. 7 at 7].

Thus the threshold inquiry is whether the Report's inclusion of Plaintiff's arrest and related charges, which were more than seven years old at the time of the report, means that the information in the Report was not "up to date" as required by § 1681k(a)(2). See Kelly v. Bus. Info. Grp., Inc., 2016 WL 7404470, at *4 (E.D. Pa. Dec. 22, 2016) (holding that to assert a violation of § 1681k(a)(2) "[i]t is not enough to allege that a CRA did not maintain procedures

designed to insure completeness and currency; the CRA must have reported public record information that was either incomplete or not up to date"). The statute defines "up to date" as follows: "[f]or purposes of [§ 1681k(a)(2)], items of public record relating to arrests [and] convictions . . . shall be considered up to date if the current public record status of the item at the time of the report is reported." 15 U.S.C. § 1681k(a)(2). To operationalize this definition, however, it is necessary to further define what is meant by the "current public record status" of an item. In an opinion letter that courts have cited as persuasive authority, see e.g., Kelly, 2016 WL 7404470, at *9; Jones v. Sterling Infosystems, Inc., 317 F.R.D. 404, 410 (S.D.N.Y. 2016); Oses v. Corelogic Saferent, LLC, 171 F. Supp. 3d 775, 781 (N.D. Ill. 2016); Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 696–97 (N.D. Ga. 2012), the Federal Trade Commission ("FTC") explained that reporting the "current public record status" of an item means including all the latest developments in a case: "For example, if the [credit reporting agency] reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report. Similarly, if the [credit reporting agency] reports a conviction, it must report a reversal that has occurred on appeal." FTC, Division of Financial Practices, Fair Credit Reporting Act Staff Opinion Letter, 1999 WL 33932137, at *1. Notably, the FTC's definition of the "current public record status" of an item requires only that available information not be omitted and does not prohibit, as relevant here, the inclusion of information that may be barred by another statute. Nonetheless, Plaintiff invites the Court to interpret § 1681k(a)(2)'s "up to date" requirement to also require the exclusion of information if said information is prohibited by another statute. The Court sees no basis to stretch the meaning of "up to date" to include a prohibition of information regarding old criminal records given that a different section of the FCRA, § 1681c(a)(2), addresses that specific concern. See e.g., 15 U.S.C. § 1681c(a)(2)

(requiring, among other things, that CRAs exclude information about arrests that "antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period"); see also Kelly, 2016 WL 7404470, at *8 (declining to stretch the meaning of "complete and up to date" in § 1681k to encompass § 1681e(b)'s requirement that the information be accurate).  Having concluded that § 1681k(a)(2)'s "up to date" language requires only that a report contain all the latest developments regarding, for example, an arrest, the Court finds that Plaintiff has not plausibly alleged that the Report, which disclosed all publicly available information[1] about Plaintiff's criminal history dating back to November 2011 (i.e., his arrest, the related charges, and subsequent dismissal of the charges), violates § 1681k(a)(2).  Therefore Defendant's motion to dismiss Count II is GRANTED.

### 3. Count III: Violation of § 1681(c)

Plaintiff's initial complaint alleges a violation of § 1681c(a)(2), but Plaintiff seeks leave to amend this claim to reference § 1681c(a).[2]  The Court therefore addresses the merits of the proposed amended Count III in Section III.C infra.

## IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

The Court next considers Plaintiff's motion for leave to file an amended complaint.

### A. The Proposed Amended Complaint ("PAC")

Plaintiff seeks leave to amend his complaint in three ways: (1) to attach two additional exhibits;[3] (2) to expand Count III to allege a violation of 15 U.S.C. § 1681c(a) generally rather

---

[1] See [ECF No. 13 at 6–11 (publicly available court records from Norfolk, Virginia)].
[2] The Court notes that the alleged violation in the original complaint likely would have survived Defendant's motion to dismiss as Defendant's Report included a record of arrest without a conviction that occurred more than seven years before.
[3] The two proposed exhibits are (1) the background check created by Defendant about Plaintiff and (2) a letter sent from the Fire Department to Plaintiff to notify him of his rejected application.

than just § 1681c(a)(2); and (3) to assert another cause of action for violation of Massachusetts General Laws ch. 151B, § 4(9). [ECF No. 15 at 3]. Defendant opposes the motion to amend on the grounds that any additions to or revisions of the causes of action would be futile and prejudicial. [ECF No. 17 at 7–10].[4] Plaintiff responds that the proposed amendments are not futile and that because the Court has not yet held its scheduling conference and discovery has not commenced, there is no threat of prejudice. [ECF No. 20 at 6–7].

**B.   Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend generally should be "freely give[n] . . . when justice so requires." See Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). "[E]ven so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citing Foman, 371 U.S. at 182). In the context of a motion to amend, "futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." O'Leary v. New Hampshire Boring, Inc., 323 F.R.D. 122, 126 (D. Mass. 2018) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

"If leave to amend is sought before discovery is complete and neither party has moved

---

[4] Defendant, however, does not specifically oppose Plaintiff's request to attach the two exhibits to the complaint. Accordingly, Plaintiff's motion to amend to add the two exhibits is GRANTED.

for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001). Under this standard, an amendment will not be deemed futile unless it fails to support a "plausible entitlement to relief." Rodrìguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). "In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and 'exercise its informed discretion in constructing a balance of pertinent considerations.'" United States ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 342 (D. Mass. 2015) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30–31 (1st Cir. 2006)).

### C. Discussion

#### 1. Count III: Violation of 15 U.S.C. § 1681c(a)

Plaintiff asks to modify Count III to allege a violation of 15 U.S.C. § 1681c(a) generally, which requires CRAs to exclude certain information from consumer reports. [ECF No. 15 at 3]. In relevant part, § 1681c(a)(2) requires the exclusion of "civil suits . . . and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period." Beyond that, § 1681c(a)(5), a general "catchall" provision, mandates exclusion of "any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. §§ 1681c(a)(2) and (5).

Defendant claims that such amendment would be futile because, in its view, Plaintiff's "criminal history" did not occur more than seven years before the Report was issued. [ECF No. 17 at 13]. The Norfolk, Virginia court records show that the warrant for Plaintiff's arrest was executed on November 20, 2011, and that the criminal complaint against Plaintiff was filed on

15

November 28, 2011. [ECF No. 13 at 9, 11]. The Report at issue was dated October 2, 2019. [ECF No. 13 at 13]. Thus the arrest and resulting charges happened approximately eight years before the Report was issued. Nonetheless, Defendant argues that the start of the seven-year-window for purposes of § 1681c(a) begins when the charge is dismissed. Not so. Other courts have held, and this Court agrees, that the seven-year period begins at the time of entry, not, as Defendant argues, when the charge is dismissed, or a court issues a decision. See Moran v. Screening Pros, LLC, 943 F.3d 1175, 1182 (9th Cir. 2019) ("[T]he date of entry triggers the seven-year window for a criminal charge.")

Defendant also argues that leave to amend should be denied for futility because § 1681c(a)(2) requires that CRAs exclude from their reports records of arrest that antedate the report by more than seven years but does not require exclusion of "prior charges of criminal assault or prior violations of restraining order(s)." [ECF No. 17 at 11]. To start, the Court notes that Plaintiff has sought leave to amend Count III to allege a violation of § 1681c(a), generally, and thus even if the Court agreed with Defendant that Plaintiff could not make out a claim under § 1681c(a)(2), such a finding would not preclude granting leave to amend. Nonetheless, in the interest of a complete record, the Court addresses Defendant's argument in full.

Section 1681c(a)(2) provides that CRAs must exclude from consumer reports "[c]ivil suits . . . and records of arrest that, from the date of entry, antedate the report by more than seven years[.]" The Amended Complaint asserts that Defendant violated § 1681c(a) by "disclos[ing] [in the October 2019 Report] that in 2011 Plaintiff was arrested[.]" [ECF No. 15-1 at 6]. Thus it plainly alleges the inclusion of information—his arrest—prohibited by § 1681c(a)(2). Therefore, the Court finds that Plaintiff has plausibly alleged a violation of § 1681c(a)(2).

Section 1681c(a)(5), for its part, requires that CRAs exclude "any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5). Multiple courts have found that dismissed charges—like Plaintiff's—qualify as adverse information under the FCRA. See Haley v. TalentWise, Inc., 9 F. Supp. 3d 1188, 1191 (W.D. Wash. 2014); see also Dunford v. American Databank, LLC, 64 F. Supp. 3d 1378, 1394 (N.D. Cal. 2014). Thus, under a plain reading of the statute and taking the allegations as true, the inclusion in the Report of a charge that was more than seven-years-old plausibly violates § 1681c(a)(5). In light of the foregoing, the Court finds that it is not futile to amend the complaint to include an alleged violation of § 1681c(a)(5).

Setting aside the futility argument, Defendant also argues that leave should be denied because the proposed amendment concerning § 1681c(a) would be prejudicial. [ECF No. 17 at 10–13]. The more discovery has progressed, the higher the risk of undue prejudice to the opposing party. Hogan v. InStore Grp., LLC, 512 F. Supp. 3d 157, 168 (D. Mass. 2021). In particular, prejudice is more likely to occur where a motion to amend requires "a re-opening of discovery with additional costs . . . and a likely major alteration in trial tactics and strategy." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)). Here, the parties have not had a scheduling conference, nor has discovery commenced. This case is still in its infancy. Thus Defendant will not be unduly prejudiced by the addition of this claim.

In light of the foregoing, Plaintiff's motion to amend Count III is GRANTED.

2. Proposed Count IV: Violation of Massachusetts General Laws ch. 151B, § 4(9)

Plaintiff also seeks leave to add a fourth cause of action under Massachusetts General Laws ch. 151B, § 4(9). In support, Plaintiff alleges that Defendant, in its capacity as an agent of

17

the Fire Department, "requested information orally from Plaintiff regarding a charge and arrest for which no conviction resulted." [ECF No. 15-1 at 8–9]. Plaintiff further asserts that the Fire Department "purportedly based their denial of Plaintiff's employment [ ] upon the fact that Plaintiff gave false information by withholding information that he has a right to withhold[,]" i.e., his arrest in 2011. [Id. at 9]. Defendant responds that this amendment would be futile. [ECF No. 17 at 7].

Chapter 151B, § 4(9), in part, prohibits "discriminat[ion] against any person by reason of his or her failure to furnish such information through a written application or oral inquiry or otherwise regarding: (i) an arrest, detention, or disposition regarding any violation of law in which no conviction resulted." The statute also prohibits an employer, or their agent, from requesting any information regarding an arrest that did not result in a conviction. Id. The statute does not, however, prohibit employers from obtaining information about criminal charges from another source. Indeed, the Supreme Judicial Court of Massachusetts has held that Chapter 151B, § 4(9) was intended "to protect employees from such requests from their employers and not to proscribe employers from seeking such information elsewhere." Bynes v. School Comm. of Boston, 411 Mass. 264, 268 (Mass. 1991).

Taking the allegations in the proposed amended complaint as true, as is required at this phase of litigation, Defendant, as an agent of Plaintiff's prospective employer, asked Plaintiff to provide information about a charge and arrest for which no conviction resulted. [ECF No. 15-1 at 8–9]. At the motion to dismiss stage, this is sufficient to plead a violation of chapter 151B, § 4(9). Thus Plaintiff's proposed amendment to add a cause of action under Mass. Gen. Laws. ch. 151B, § 4(9) is GRANTED.

V. **CONCLUSION**

Accordingly, Plaintiff's motion for leave to amend, [ECF No. 14], is <u>GRANTED</u> and Defendant's motion to dismiss, [ECF No. 6], is <u>GRANTED</u> in part and <u>DENIED</u> in part. Specifically, Counts I and II are hereby <u>DISMISSED</u>. Plaintiff shall file a copy of his amended complaint consistent with this Memorandum and Order.

**SO ORDERED.**

July 7, 2022                                                              /s/ Allison D. Burroughs
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE