UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERALD MEUSE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| NATIONAL P.I. SERVICES, LLC, and JOHN | * | Civil Action No. 21-cv-11533-ADB |
| DOES 1–10, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Gerald Meuse ("Plaintiff") alleges that National P.I. Services, LLC ("Defendant"), a

consumer reporting agency ("CRA") that prepares background screening reports at the request of

different companies, violated various provisions of the Fair Credit Reporting Act, 15 U.S.C.

§§ 1681–1681x ("FCRA"), and Massachusetts General Laws ch. 151B, § 4(9) by providing

reports that contained prohibited details about Plaintiff's criminal record.

Presently before the Court is Plaintiff's second motion to amend the complaint. [ECF

No. 30]. For the reasons set forth below, Plaintiff's motion is <u>GRANTED</u>.

I.      **BACKGROUND**

A.      **Procedural History**

On September 19, 2021, Plaintiff filed a three-count complaint alleging violations of (1)

15 U.S.C. § 1681e(b) (Count I); (2) 15 U.S.C. § 1681k(b) (Count II); and (3) 15 U.S.C. §

1681c(a)(2) (Count III).  [ECF No. 1 ¶¶ 31–43 ("Complaint" or "Compl.")].  Between November

2021 and February 2022, Defendant filed a motion to dismiss, [ECF No. 6], and Plaintiff moved

to amend the complaint to, among other things, add a claim for violation of Massachusetts General Laws ch. 151B, § 4(9), [ECF No. 14].

On July 7, 2022, the Court granted Defendant's motion to dismiss in part and denied it in part, and also granted Plaintiff's motion to amend the then operative Amended Complaint. [ECF No. 22 at 19].[1]  As relevant here, the Court dismissed Count I (15 U.S.C. § 1681e(b)) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Id. at 7–10].

On June 27, 2023, Plaintiff filed the instant second motion to amend the complaint to add back a claim under 15 U.S.C. § 1681e(b) in light of facts learned during discovery. [ECF No. 30; ECF No. 31 at 2].  In addition to the motion, he filed the proposed second amended complaint. [ECF No. 30-1 ("Proposed Second Amended Complaint" or "Proposed 2nd Am. Compl.")].  Defendant opposed on July 10, 2023. [ECF No. 33].

### B.   Factual Background[2]

In September 2019, Plaintiff applied for a firefighter position with the City of Everett Fire Department (the "Fire Department"). [Am. Compl. ¶ 26].  As part of the application process, the Fire Department procured a background screening report (the "Report") about Plaintiff from Defendant. [Id. ¶ 27].  Plaintiff alleges that the Report was false and misleading, such that Defendant violated 15 U.S.C. § 1681e(b) in preparing it.[3]  [ECF No. 31 at 2].

---

[1] Plaintiff filed an amended complaint on July 9, 2022. [ECF No. 23 ("Amended Complaint")].

[2] A summary of the facts is set out in the Court's order on Defendant's motion to dismiss and Plaintiff's first motion to amend. [ECF No. 22 at 1–2].  The Court only repeats facts as necessary and relevant here.

[3] 15 U.S.C. § 1681e(b) requires that when a CRA prepares a report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b), and thus cannot contain material inaccuracies, DeAndrade v. Trans Union LLC, 523 F.3d 61, 65–66 (1st Cir. 2008).

As explained above, the Court previously dismissed Plaintiff's claim under the same statute for failure to state a claim under Rule 12(b)(6).  [ECF No. 22 at 7–10.]  First, the Court found that, with respect to a 2011 arrest, the Report stated that "Plaintiff was arrested, charged, and that the charges were later dropped, and thereby avoid[ed] leaving the impression that the charges are still pending or resulted in a conviction," which was "technically accurate and not misleading."  [Id. at 9].

Second, the Court found that the Report did not improperly accuse Plaintiff "of dishonesty by disclosing that when Defendant's investigator asked him about the events in November 2011 that led to his arrest, he denied both the arrest and the alleged underlying conduct."  [ECF No. 22 at 9–10].  Despite Plaintiff's view that his denial was accurate "because he had no obligation . . . to admit to his prior arrest," the Court found that he "d[id] not claim that the Report misrepresented his answers" to the investigator, and also that he did not "challenge [his former girlfriend's] description of events that led her to call the police and seek a protective order" prior to the arrest.  [Id. at 10].[4]  The Court reasoned "that the Report d[id] not expressly accuse Plaintiff of dishonesty," and instead "merely state[d] that Plaintiff denied the arrest, denied having 'put hands on' Ms. Mays, and that Ms. Mays offered a different description of events."  [Id. at 10 (quoting ECF No. 13 at 18)].  "Moreover, the information d[id] not cause the reader to draw an erroneous inference (e.g., that the charges are still pending)."  [Id.].

---

[4] Plaintiff also argued that "the Report's description of his inaccurate answer is misleading because Massachusetts General Laws ch. 151B, § 4(9) prohibits both Defendant from asking him about the arrest and the Fire Department from discriminating against him for a failure to provide information about said arrest."  [ECF No. 22 at 10].  The Court found that "whether Defendant or the Fire Department violated Massachusetts General Laws ch. 151B, § 4(9) is a separate question from whether the information is inaccurate or materially misleading in violation of § 1681e(b)," and thus "decline[d] to read into § 1681e(b) prohibitions contained in a separate statute, namely Massachusetts General Laws ch. 151B, § 4(9)."  [Id.].

Plaintiff's proposed Second Amended Complaint seeks to overcome the deficiencies in the Amended Complaint by adding facts learned from the depositions of Sue Smith, Defendant's investigator and co-owner, Toni McKenna and Frank Santin, Defendant's investigators, and Beatrice Mays, Defendant's former girlfriend.  [ECF No. 31 at 2–3].

First, Plaintiff alleges that the Report incorrectly stated that Plaintiff "did not bother to get certified as an EMT which would indicate that he is not entirely vested in a career with the Everett Fire."  [ECF No. 31 at 2]; see also [Proposed 2nd Am. Compl. ¶¶ 43–44].  He alleges this is false because he is "in fact certified as an EMT," [ECF No. 31 at 2]; see also [Proposed 2nd Am. Compl. ¶ 44], that Smith never asked if he was certified, and the investigator who completed the Report never talked to Plaintiff beyond scheduling an appointment with him, [ECF No. 31 at 2].  Thus, he avers that "[i]nstead of writing that Defendant did not inquire into whether Plaintiff was certified as an EMT, Defendant made a false factual assertion."  [Id.].

Second, Plaintiff avers that at the time of his 2011 arrest, "he was never placed in handcuffs and was never escorted to the police station by police," and that, "as a lay person, [he] reasonably believed that he was never arrested and that was why he stated as such in his employment application."  [ECF No. 31 at 2–3]; see also [Proposed 2nd Am. Compl. ¶¶ 45–46]. Mays also believed that Plaintiff was not arrested "and that he was simply escorted out of the apartment by police."  [ECF No. 31 at 3].  He argues that Defendant did not include his or May's version of events in the Report, which "created an impression that [he] was dishonest instead of disclosing all facts to allow the Fire Department to make its own assessment of Plaintiff's honesty."  [Id.]; see also [Proposed 2nd Am. Compl. ¶¶ 45–46].

Third, Plaintiff says that the Report incorrectly "insinuate[s] that [he] lied about his residence."  [ECF No. 31 at 3]; see also [Proposed 2nd Am. Compl. ¶¶ 39–42].  Specifically, he

alleges that a factor in the denial of his employment was the Report's statement that he "claims to have lived in Everett from 2015-2018 at 225 Main Street" and that "the home was owned at the time by a friend 'Kyle North' who [had] since sold the property," but the "[t]he Investigator found no proof that Mr. Meuse lived there."  [Proposed 2nd Am. Compl. ¶ 39]; see also [ECF No. 31 at 3].

Plaintiff avers, however, that "Defendant's own investigative tool revealed that [he] resided at [that] address" between 2015 and 2019, which "was not disclosed in the body of the written report."  [Proposed 2nd Am. Compl. ¶ 40]; see also [ECF No. 31 at 3].  He states that he had "various documentation linking him to the address," but that it was never requested from him, [Proposed 2nd Am. Compl. ¶ 40]; see also [ECF No. 31 at 3], and that the investigator never asked Mr. North whether Plaintiff lived at the address, [Proposed 2nd Am. Compl. ¶ 41]; see also [ECF No. 31 at 4].

The Report also stated that the investigator "ran an inquiry through the voter's registration in order to tie [Plaintiff] physically to that address and learned that he was not a registered voter."  [ECF No. 31 at 3]; see also [Proposed 2nd Am. Compl. ¶ 42].  Plaintiff avers that "Defendant knew . . . that it is common that applicants . . . are commonly not registered to vote," as he is not, which was not stated in the report.  [Proposed 2nd Am. Compl. ¶ 42]; see also [ECF No. 31 at 3].

Finally, Plaintiff alleges that the Report falsely stated that his "job history before and after his military service is hard to verify," and that, in reality, Defendant "did nothing to verify Plaintiff's job history."  [ECF No. 31 at 4]; see also [Proposed 2nd Am. Compl. ¶¶ 30–37].  Specifically, he avers that after his military service, until 2019, he was taking college classes and completed infantry training.  [Proposed 2nd Am. Compl. ¶ 33]; see also [ECF No. 31 at 5].

Instead of mentioning this, he says, the Report made him out to be a "vagrant" by claiming that his employment was "hard to verify." [Proposed 2nd Am. Compl. ¶ 33]; see also [ECF No. 31 at 5]. He then says that the Report's statements that "[h]e makes his money as a Lyft driver and he occasionally works for Encore Casino as a Security Officer" and that "[h]e informed [Defendant] that his work references will be hard to contact," [Proposed 2nd Am. Compl. ¶ 31], were only "half true" in that "Defendant never bothered to contact Plaintiff's employer or contacted Plaintiff's employer no more than once," and that although "Defendant confirmed Plaintiff's primary employer[, it] failed to disclose that on Plaintiff's report, [id. ¶ 32]; see also [ECF No. 31 at 4–5]. In sum, Plaintiff alleges that the Report made him out to be "either dishonest in his employment application or . . . a vagrant lacking employment or both." [Proposed 2nd Am. Compl. ¶ 38].

## II.    STANDARD OF REVIEW

Rule 15(a) provides that leave to amend generally should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[E]ven so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). A court may deny leave to amend for reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," Foman v. Davis, 371 U.S. 178, 182 (1962), but "[t]he key consideration is whether the [non-moving party] will be prejudiced if the motion to amend is allowed[,]" Nasson v. Van Winkle, No. 91-cv-11823, 1994 WL 175049, at *1 (D. Mass. Apr. 19, 1994) (citation omitted).

## III.   DISCUSSION

Defendant generally argues that Plaintiff's Proposed Second Amended Complaint is (1) unreasonably delayed, (2) futile in that his claim is no longer ripe, and (3) unfairly prejudicial to the Defendant.

With respect to delay and prejudice, Defendant only makes conclusory statements, without any clear argument or support, about the proposed amendment being unreasonably delayed and prejudicial.  See [ECF No. 33 at 9–12].  Thus, the Court will only consider whether the proposed amendment would be futile.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed.").[5]

"If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)."  Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001).  Under this standard, an amendment will not be deemed futile unless it fails to support a "plausible entitlement to relief."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

---

[5] Even if the Court did reach delay and prejudice, the present motion was not unreasonably delayed when it was brought shortly after the depositions that unveiled the new alleged facts, see [ECF No. 31 at 2], and there is likely little prejudice because Defendant "was on notice" of a potential claim under 15 U.S.C. § 1681e(b) "from the inception of the [] case," and the previously alleged claim was based on substantially the same set of events, see [ECF No. 31 at 6–7]; see also Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 244 F.R.D. 49, 50–51 (D.D.C. 2007) ("The Court may deem prejudicial an amendment that substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation") (citation and internal quotation marks omitted), reconsideration granted on other grounds, 246 F.R.D. 39 (D.D.C. 2007).

Section 1681e(b) requires that when a CRA prepares a report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To make out a claim under § 1681e(b) a plaintiff must allege that: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry."  Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 85 (D. Mass. 2001) (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996)); see also McIntyre v. RentGrow, Inc., 34 F.4th 87, 96 (1st Cir. 2022) (citing DeAndrade, 523 F.3d at 65–66 ("In order to succeed on a section 1681e(b) claim, the plaintiff must show that h[is] [] report contained one or more material inaccuracies.")).

Here, Defendant appears to argue that the amendment would be futile because (1) information in the Report about Plaintiff's arrest was accurate, [ECF No. 33 at 10]; (2) his claims are no longer ripe because Defendant has now been offered a firefighter job by the City of Everett, [id. at 10–11]; and (3) Plaintiff has not alleged a concrete harm as a result of the deficient Background Report, [id. at 11–12].

First, even if information in the Report regarding Plaintiff's arrest was accurate, Plaintiff has separately alleged that the Report inaccurately describes his EMT certification status, [ECF No. 31 at 2]; see also [Proposed 2nd Am. Compl. ¶¶ 43–44], his housing situation, [ECF No. 31 at 3–4]; see also [Proposed 2nd Am. Compl. ¶¶ 39–42], and his job history, [ECF No. 31 at 4]; see also [Proposed 2nd Am. Compl. ¶¶ 30–37].  Defendant does not contest that these facts are inaccurate under the first prong of § 1681e(b), but instead argues, for only the EMT certification and housing issues, that they "do not rise to the level of concrete harm . . . to confer standing."

[ECF No. 33 at 12].  The Court therefore finds that Plaintiff has sufficiently alleged inaccurate statements in the Report to satisfy the first prong of § 1681e(b).  McIntyre, 34 F.4th at 96 (a material inaccuracy can be established by "showing that the report contained an entry or entries that . . . were either false or materially misleading.") (citing Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008); see also Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998) (explaining that information can be "'inaccurate' within the meaning of [§ 1681e(b)] either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions").

Defendant's second and third arguments—that the claims are no longer ripe and that Plaintiff has not alleged a concrete harm—both hinge on the fact that Defendant has now been offered a firefighter job by the City of Everett, but has refused to take it.  [ECF No. 33 at 10–12]. As explained in the Court's Order on Defendant's motion to dismiss, "Plaintiff [] adequately alleged that an injury-in-fact, namely delayed employment and reputational harm, has already occurred," and also "alleged economic damages due to delayed employment and reputational harm," and these allegations are "sufficiently particular and concrete" such that "Plaintiff has standing to bring his claims."  [ECF No. 22 at 5–6].  The Court finds no basis to reach a different result here, and thus finds that because Plaintiff's claims are ripe and he has sufficiently alleged a concrete harm, amendment is not futile.

IV.    **CONCLUSION**

Accordingly, Plaintiff's second motion to amend the complaint, [ECF No. 30], is GRANTED.

**SO ORDERED.**

October 20, 2023                                    /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS

U.S. DISTRICT JUDGE